# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

BETTY JO JACOBS,                           )
                                           )
    Plaintiff,          )
                                           )
                                           )    No.    3:04cv1034
    v.                  )    Judge Thomas Wiseman
                                           )
UNUM LIFE INSURANCE                        )
COMPANY OF AMERICA,                        )
                                           )
    Defendant.

## MEMORANDUM

Plaintiff, Betty Jo Jacobs ("Ms. Jacbos) filed the present action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § § 1001, et seq. ("ERISA") seeking recovery of long-term disability benefits provided for and denied under a disability plan policy, Policy Number 520994, (the "Policy") issued to Ms. Jacobs' employer Vanderbilt University and administered by Defendant, UNUM Life Insurance Company ("UNUM").[1]  Presently pending before the Court is Ms. Jacobs' Motion for Judgment on the Administrative Record and Memorandum in Support (Doc. Nos. 18 and 19), to which UNUM has responded in opposition (Doc. No. 23).  Also pending is UNUM's Motion for Judgment on the Administrative Record and Memorandum in Support (Doc. Nos. 20 and 21), to which Ms. Jacobs has responded in opposition (Doc. No. 22).

Upon consideration of the cross-motions for Judgment on the Administrative Record and for the reasons set forth below, the Court will DENY Plaintiff Ms. Jacob's Motion for Judgment on the Administrative Record (Doc. No. 18), GRANT Defendant UNUM's Motion for Judgment on the Administrative Record (Doc. No. 20) and enter judgment on the administrative record in favor of UNUM.

---

[1]The pages of the administrative record are numbered UACL0001 through 00786.  The disability Policy at issue is contained within the administrative record (UACL00508-547).

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff, Ms. Jacobs, now approximately sixty-three years old, was employed as a Patient Care Technician by Vanderbilt University Medical Center ("VUMC") from March 6, 1995 until her resignation on March 7, 2002.  (UACL00689).  According to the job description provided by VUMC, Ms. Jacobs specific responsibilities as a Patient Care Technician included patient care,[3] coordinating patient flow and room utilization,[4] and participating in orientation of new personnel.  (UACL00678-680.)  On November 1, 1997 she was provided with a long-term disability plan that set forth the terms and conditions upon which she would qualify for long-term disability benefits under the Policy, which was administered by Defendant UNUM. (UACL00508-547.)  The parties agree that the Policy was provided by Ms. Jacobs' employer as a benefit, and therefore is an "employee benefit welfare plan" as defined in ERISA, 29 U.S.C. § 1002(1)(A).

On or about December 12, 2001,[5] Ms. Jacobs experienced a seizure at work and was transported to the Vanderbilt University Hospital Emergency Room where she was admitted for tests and observation. (UACL00485; UACL00678-680.)  According to the Record, Ms. Jacobs has a significant past medical history

---

[2]The Court's recitation of the facts and its subsequent analysis are based exclusively on the evidence that was before the plan administrator when it reached a final decision on Ms. Jacobs' claim for disability benefits.  In its analysis, infra, the Court will set forth additional facts from the Record as necessary.

[3]According to the job description provided, Ms. Jacobs' performance of patient care included the following key functions: (1a) measure and record vital signs, height, weight, head circumference, and other varying physical measurements, medications and allergies as directed by MD or RN; (1b) perform/assist with procedures, according to practice protocol; and (1c) participate in the teaching of patients and families, under the guidance of MD/RN; assess readiness to learn and barriers to learning; provide information and record teaching.  (UACL 00679).

[4]Functions included: (2a) deliver specimens to lab timely, according to lab standards; obtain X-rays from Radiology, (2b) distribute according to MD instructions, return them to radiology at the end of the day; (2c) place patients in rooms according to appointment time, patient and room availability and MD availability; (2d) order or assist with ordering drugs and supplies according to practice standards; (2e) stock rooms according to practice specifications.  (UACL 00678-679.)

[5]It is unclear from the Record whether Ms. Jacobs suffered the seizure at work on December 12 or December 13, 2001, but as discussed further herein, the one-day discrepancy in dates was not relevant to UNUM's decision to deny her claim for long-term disability, nor is it relevant to the Court's review of UNUM's decision.

Case 3:04-cv-01034   Document 25   Filed 02/21/06   Page 2 of 23 PageID #: 69

of seizure disorder possibly associated with epilepsy, as well as a history of depression.[6] (UACL00661-662; UACL00674.). At the time of the incident at work, Ms. Jacobs was taking Dilantin for a seizure disorder and Prozac for depression. (UACL00674; UACL00677.) Ms. Jacobs was released from Vanderbilt Medical Center on December 15, 2001 and did not return to work after that date. (UACL00681-689.)

On February 26, 2002, Jane Case, a family nurse practitioner and Ms. Jacobs' primary care provider since 1999, provided Ms. Jacobs with a note for her employer VUMC stating that she had been out of work since December 13, 2001 and her date back to work was "uncertain" as her "illness has not resolved." (UACL00653.) Ms. Jacobs resigned from her position as a Patient Care Technician on March of 7, 2002. (UACL00689-681.) Approximately three months later, on or about June 3, 2002, Ms. Jacobs filed a claim with UNUM for long-term disability benefits under the Policy. (UACL00687.)

### A. UNUM's Review of Ms. Jacobs' Claim for Long-Term Disability Benefits

Based on the requirements of the Policy, as part of her initial claim for long-term disability benefits, Ms. Jacobs was asked to provide specific information regarding her alleged disability and the medical attention she had received for that disability on a form provided by UNUM. (UACL00686.) On this claim form Ms. Jacobs reported that she was unable to work due to "seizures-weakness-confusion" and that the first time she received treatment for her disability was during her stay at the VUMC between December 13 and December 15, 2001. (Id.) The claim form also asked Ms. Jacobs' to identify all physicians and hospitals she had seen for her disability and the dates she was treated. Ms. Jacobs identified Dr. Richard Hoos, a neurologist; Dr. Michael Tramontana, a psychiatrist, and Jane Case, a family nurse practitioner, as medical personnel who had seen her for her disability at some point, yet Ms. Jacobs did not provide the specific dates she saw them or how often. (Id.)

In addition to the information provided by Ms. Jacobs, the initial long-term disability claims process

---

[6]According to the Record, Ms. Jacobs was diagnosed with seizures when she was 16 years-old and her seizure disorder was treated with medication for several years. She stopped taking medication for the seizure disorder sometime in 1989 and did not take any medication for the condition until she began to experience seizures and symptoms related to the condition sometime in October of 1999, approximately two years before the incident in December 2001. (UACL00656.) According to her medical records submitted to UNUM in support of her claim for disability, Ms. Jacobs was taking Prozac for depression when she first began to see her primary care provider Jane Case, FNP, in July of 1999. (UACL00654.)

3

also required that the "physician who was treating the claimant when he or she last worked" complete a Physician's Statement and submit any office notes, test results and discharge summaries related to the treatment. (UACL00684-685.) On June 20, 2002, Ms. Case filed a "Long Term Disability Claim Physician's Statement" with UNUM. (UACL00685-684.) Ms. Case recorded Ms. Jacobs' primary diagnosis as depression with symptoms such as fatigue, malaise, withdrawn, and poor balance. (UACL00684-685.) Ms. Jacobs' "seizure disorder" and "migraines" were identified as secondary problems. (Id.) In addition, Ms. Case reported that although she began treating Ms. Jacobs in July of 1999 and was treating her when she first showed symptoms of depression in December 2000, Ms. Case had not treated Ms. Jacobs since February 2002, approximately four months prior to the date she submitted her claim for long-term disability benefits . (Id.)

In order to evaluate Ms. Jacobs' claim for long-term disability benefits, UNUM requested all of Ms. Jacobs' medical records and documentation from the medical providers identified on her claim forms. (UACL000745-746; UACL00755-763.)

1.      Medical Review by Maria D. Long, Clinical Social Worker

In December of 2002, after requesting and receiving Ms. Jacobs' medical records, UNUM made a clinical referral of Ms. Jacobs' claim to Maria D. Long, a licensed clinical social worker, who reviewed Ms. Jacobs' claim file. On December 16, 2002, Ms . Long issued a report concluding that the medical data available to review did not "provide sufficient evidence of impairment from the date of loss to the present." (UACL00748-750.)[7] However, Ms. Long suggested that before making a final determination UNUM should clarify several facts regarding Ms. Jacobs' medical treatment, including: (1) whether she was treated for alleged disability at any other time between January and July of 2002; (2) the dates of any hospitalization; and (3) whether Ms. Jacobs received and followed hospital discharge plans after hospitalization in December 2001. (Id.) Accordingly, UNUM's case manager contacted Ms. Jacobs' daughter Rebecca to request the

---

[7]The Record contains duplicate copies of several documents found in Ms. Jacobs' claim file including Ms. Long's Claim Documentation report, which is also found in the Record at UACL00488-490. In the case of duplicate documents, the Court will cite to the first instance contained in the Record as filed with the Court. The Court notes that the Record presented for review in this case is in reverse numerical order, beginning with UACL000786 and continuing back to UACL0001.

additional information.

On December 18, 2002, Ms. Long filed an addendum to her report updating her conclusion based on the information gathered from Ms. Jacobs' daughter Rebecca during a telephone conversation with the UNUM case manager. Rebecca confirmed that Ms. Jacobs was hospitalized in December of 2001 for seizures and that Ms. Jacobs was supposed to start psychotherapy after her discharge. (UACL00747-748.) According to Rebecca, Ms. Jacobs lost her insurance coverage in 2002 and did not seek any psychiatric treatment between March, 2002 and June 17, 2002, when she was hospitalized for four days at Middle Tennessee Mental Hospital for an attempted suicide. (Id.) Rebecca also reported that although Ms. Jacobs did see her primary care provider Ms. Case between January and July of 2002, it was not on a regular schedule. Rather, Ms. Case only saw Ms. Jacobs on an "as needed" basis, usually when her family called for an appointment based on Ms. Jacobs' behavior. Moreover, Ms. Case's only "treatment" of Ms. Jacobs between January and July 2002 consisted of monitoring the levels of Dilantin, an anti-seizure medication, in her blood. (Id.) Based on this supplemental information provided by Rebecca and the notes provided by Ms. Jacobs' primary medical and mental health care providers, Ms. Long determined that Ms. Jacobs was not in "acute psych impairment," nor was she in active psychiatric treatment during the elimination period from December 2001 until June 2002. (UACL00747-748.)

2.    Medical Review by George M. Dominak, M.D.

Following Ms. Long's review of Ms. Jacob's claim file, UNUM made a second referral to Dr. George M. Dominak, a physician board certified in psychiatry and neurology, who completed an additional review of medical records received from Ms. Jacobs' medical providers. Dr. Dominak noted that Ms. Jacobs was diagnosed with Major Depression, single episode, moderate severity, on March 27, 2002, yet all of the information provided to UNUM showed that Ms. Jacobs' December 2001 hospitalization was for seizures. (UACL00487.) Moreover, the December 2001 records did not provide the necessary information regarding her treatment and admission for Dr. Dominak to determine whether she was impaired due to a psychiatric condition at the time. (Id.) Based on the available medical information, Dr. Dominak concluded that the "[s]everity and consistency of psychiatric symptoms from December 2001 to March 2001 cannot be determined, but given the lack of treatment [the symptoms] were likely not severe and impairing." (Id.)

5

Accordingly, like Ms. Long, Dr. Dominak suggested that an additional review of the hospital records from Ms. Jacobs' December 2001 hospitalization "might shed some light on nature and severity of her illness." (Id.)

On December 30, 2002 Dr. Dominak updated his initial review based on additional records from Ms. Jacobs' December 2001 hospitalization. (UACL00487.) Dr. Dominak noted that although the records showed Ms. Jacobs was admitted to the hospital for probable seizure with post-ictal effects and there was a mention of a "functional" component to her symptoms, there was no description in the records of severe mental illness or obvious or cognitive instability. (Id.) Therefore, Dr. Dominak determined that "there are no clinical records that substantiate the presence of a severe impairing psychiatric condition or acute symptoms between December 2001 and a subsequent psychiatric hospitalization in June 2002. (Id.)

3.      UNUM's Decision to Deny Ms. Jacobs' Claim for Long-Term Disability Benefits

Relying on the reviews and opinions of Ms. Long and Dr. Dominak, members of UNUM's medical staff, and the claim requirements of the Policy, UNUM denied Ms. Jacobs' claim for disability benefits. Specifically, UNUM determined that the information provided in support of Ms. Jacobs' claim failed to demonstrate that she was receiving regular care for any disability or that she had a provider who could certify her disability from March 2002 through June 26, 2002 and therefore, Ms. Jacobs' did not meet the 180 day elimination period, which ran from December 16, 2001 through June 14, 2002. (UACL00733; UACL00737-741.)

On January 20, 2003 UNUM sent a letter to Ms. Jacobs notifying her of its decision and setting forth the Policy provisions on which it based its decision. (Id.) Specifically, UNUM explained that it was denying Ms. Jacobs' claim based on her failure to comply with the Policy provisions requiring that she provide sufficient evidence to show that: (1) she was continuously disabled throughout the 180-day elimination period; (2) she was under the regular care of a physician;[8] and (3) she was unable to perform any of the material and

_____

[8]The Policy defines "regular care" to mean that "the applicant personally visits a physician as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat the disabling conditions; and the applicant is receiving the most appropriate treatment and care which conforms with generally accepted medical standards, for the disabling condition(s) by a physician whose speciality or experience is the most appropriate for the disabling condition(s) according to generally accepted medical standards." (UACL00510).

6

substantial duties of her regular occupation during the entire elimination period.[9] (Id.)  In addition, the denial letter also informed Ms. Jacobs that she could submit additional information in support of her claim or appeal UNUM's decision within 180 days of receipt of the letter.  (UACL00737-741.)

In March 2003, Ms. Jacobs provided additional medical records in support of her claim, but did not appeal UNUM's denial of her claim.  (UACL00726.)  UNUM received new medical records from Volunteer Behavioral Health System ("VBHS") indicating that Ms. Jacobs began treatment at VBHS on June 26, 2002.  (UACL00725.)  On April 9, 2003 UNUM made another medical referral of Ms. Jacobs' claim to Dr. Michelle Schwab, a licensed clinical psychologist, in order to determine whether the new medical records provided sufficient information to change UNUM's decision to deny the claim due to her failure to satisfy the 180-day elimination period between December 16, 2001 and June 14, 2002.  (UACL00725.)

Based on her review of the medical records, Dr. Schwab determined there was still "no evidence of ongoing treatment" throughout the elimination period.  Specifically, Dr. Schwab noted that Ms. Jacobs was evaluated on March 27, 2002 by a psychiatrist who believed she had Major Depression in partial remission and recommended her primary care provider increase her prescription for Prozac. (UACL00422.)  Yet, there was no indication in the records that Ms. Jacobs followed this recommendation or sought any medical treatment after March 27, 2002 until her admission to VBHS on June 26, 2002, when she was again diagnosed with severe, Major Depression.  (Id.)  Further, Dr. Schwab found that "the lack of ongoing psychiatric treatment and a documented partial remission period" suggested that Ms. Jacobs was not severely impaired such that she could not work at all.  (Id.)

Relying on Dr. Schwab's finding, UNUM determined that the additional medical records submitted by VBHS did not provide any information that would change its previous decision to deny Ms. Jacobs' claim due to her failure to satisfy the 180-day elimination period.  (UACL00723-724.)  On April 10, 2003, UNUM notified Ms. Jacobs of its decision and explained that it was based on the determination that the medical

---

[9]Under the Policy, a claimant is considered disabled when UNUM determines that: the claimant is limited from performing the material and substantial duties of her regular occupation due to sickness or injury; and the claimant has a 20% or more loss in her indexed monthly earnings due to the same sickness or injury.  (UACL00532.)  "Regular occupation" is defined by the Policy to mean "the occupation you are routinely performing when your disability begins.  UNUM will look at your occupation as it is normally preformed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." (UACL 00510).

information in her file "continues to lack information regarding restrictions or limitations from a psychiatric diagnosis through your elimination period of December 16, 2001 through June 14, 2002." (Id.) UNUM also informed Ms. Jacobs that her submission of additional information was not considered an appeal of her denied claim because she had not specifically requested an appellate review. As such, UNUM's letter advised Ms. Jacobs that she must submit a written appeal within 180 days of the original claim denial of January 20, 2003 or UNUM's claim decision would be final. (Id.)

**B.      UNUM's Appellate Review of Ms. Jacobs' Claim**

On April 20, 2003, Ms. Jacobs wrote a letter to UNUM requesting appellate review of its initial denial of her disability benefits. In her letter Ms. Jacobs argued that she did not feel comfortable going back to the workforce due to her depression, her inability to remember simple things and the fact that she got very agitated being with and around people. (UACL00417-419.) Ms. Jacobs did not argue that she could not work due to these conditions. Rather, Ms. Jacobs asserted that she did not trust herself to deal with lots of people and she was afraid she would do something to hurt someone if she had to go back to work. (UACL00418.) Ms. Jacobs pointed out that she was receiving disability benefits from the government and questioned why UNUM denied her claim. (UACL00419.) UNUM acknowledged receipt of Ms. Jacobs' letter on April 30, 2003. (UACL00719.)

1.      Medical Review by Dr. Zimmerman

In support of her appeal, Ms. Jacobs submitted additional medical records information related to neuropsychological testing conducted in January 2001. (UACL00195-199.) On July 8, 2003, UNUM referred Ms. Jacobs' appeal to Jana G. Zimmerman, Ph.D., a licensed psychologist, for a review of Ms. Jacobs' entire medical file including any new information submitted in support of her appeal. Specifically, UNUM requested that Dr. Zimmerman review the file and consider the following issues: (1) what diagnosis is supported by the medical evidence; (2) what are the reasonable restrictions and limitations as of December 13, 2001 based upon the medical evidence; (3) what are reasonable restrictions and limitations as of June 11, 2002 based upon the medical evidence; (4) whether the pattern of care received by the claimant consistent with the presence of an impairing illness; and (5) the consistency, credibility, and adequacy of Ms. Jacobs' reports of limitation. (UACL00711.) Dr. Zimmerman reviewed Ms. Jacobs' neurocognitive and/or emotional status

based on the information contained in her claim file, including newly submitted neuropsychological summary score test and some raw test data, but did not personally evaluate Ms. Jacobs. (UACL00199.)

Dr. Zimmerman issued a report on August 18, 2003 summarizing the medical records and information reviewed and her analysis of the data and restrictions and limitations based on that information. (UACL00195-199.) Dr. Zimmerman specifically addressed each of the issues identified by UNUM, noting that "[t]here was no significant evidence of neurocognitive impairment" as Ms. Jacobs' test results were generally within expectation. (UACL00196.) Further, Dr. Zimmerman determined that based on the medical evidence, Ms. Jacobs had not identified reasonable restrictions and limitations as of the beginning of the elimination period in December 2001 or the end of the elimination period in June 2002. (Id.) Dr. Zimmerman also opined that Ms. Jacobs' bi-monthly and monthly psychotherapy sessions and her two psychiatric sessions during the elimination period did not "suggest a pattern of care expected with an impairing illness." Moreover, Dr. Zimmerman also noted that Ms. Jacobs' medical file was "replete with inconsistencies" and "did not provide consistent compelling evidence of a psychiatrically impairing condition." (Id.)

        2.       UNUM's Decision to Uphold Its Denial of Ms. Jacobs' Disability Claim

On August 19, 2003 UNUM once again notified Ms. Jacobs by letter that it had completed its review regarding the denial of her claim for long-term disability benefits and determined that the decision to deny her claim was appropriate. (UACL00707-709.) The denial letter explained that based on the review of all of the clinical information in Ms. Jacobs' claim file by a licensed clinical psychologist and the fact that she "could not find support for psychiatric impairment as of December 13, 2001 when [Ms. Jacobs] stopped working or as of June 11, 2002, when [Ms. Jacobs'] elimination period ended," UNUM was upholding its previous determination. (UACL00708.) Once again UNUM informed Ms. Jacobs that if she possessed any "additional information that supported her inability to perform her occupational duties as of December 13, 2001," she could forward that information to UNUM for consideration within thirty days of the denial letter. (UACL00707.)

In December 2003, Ms. Jacobs submitted additional medical documentation regarding Ms. Jacobs' treatment during times before and after, but not during the elimination period. (UACL00702-703.) Because the medical documentation submitted did not relate to Ms. Jacobs' condition or treatment during the

elimination period, UNUM determined that the additional medical records were insufficient to reverse its denial of Ms. Jacobs' claim for long-term disability benefits. (Id.) Accordingly, on January 6, 2004, UNUM sent Ms. Jacobs a letter notifying her of its decision and advising her that she had exhausted all of her administrative remedies with regard to her appeal. (UACL702.)

### C.      UNUM's Second Appellate Review

On January 4, 2004, prior to receiving UNUM's final denial letter, Ms. Jacobs' attorney, Mr. Jason R. Campbell, submitted additional medical records for consideration. (UACL00701.) In an attempt to "give Ms. Jacobs every possible consideration," UNUM agreed to review the new information provided to determine whether it would change its original decision. UNUM once again referred Ms. Jacobs' claim and entire medical file, including the newly submitted information, to a board certified physician for review. (Id.)

3.      Medical Review by Dr. Alan Neuren, M.D.

On January 22, 2004, Dr. Alan Neuren, physician board certified in psychiatry and neurology, issued his report summarizing his review and analysis of Ms. Jacobs' medical records. (UACL00017-00019.) Specifically, Dr. Neuren noted that Ms. Jacobs "has a remote diagnosis of seizures for which she has been treated for many years," and based on her medical records, "this condition is stable and should not result in impairment." (UACL00017.) Dr. Neuren also determined that the assessment and treatment for chronic fatigue syndrome was unwarranted. (Id.) Accordingly, based on all of the information submitted in support of Ms. Jacobs' claim, Dr, Neuren further concluded that "the new records fail to provide any physical findings that would preclude [Ms. Jacobs] from functioning in her usual capacity." (Id.)

2.      Final Review by Jana G. Zimmerman, Ph.D.

Following Dr. Neuren's review, UNUM requested that Dr. Zimmerman, the licensed psychologist who performed the initial review of Ms. Jacobs' claim on appeal, review the newly submitted information. (UACL00016.) UNUM specifically requested that Dr. Zimmerman consider and address the following issues in her review: (1) whether the new records provide evidence of psychiatric impairment from December 31, 2001 through June 11, 2002 and beyond; (2) if so, the estimated duration of such impairment; and (3) whether the new records alter the findings outlined in the August 2003 medical review. (UACL0007.)

10

On March 16, 2004, Dr. Zimmerman issued a report summarizing Ms. Jacobs' medical records, analyzing the issues presented by UNUM, and ultimately concluding that the new medical records submitted in support of Ms. Jacobs' claim, albeit after UNUM made the decision to deny her appeal, failed to provide any information that would alter the findings in her initial review. (UACL00007.) Specifically, Dr. Zimmerman determined that the newly submitted information did not evidence a "sustained psychiatric impairment from any etiology from December 31, 2001 and beyond," with the exception of her psychiatric admission between June 18 and June 21, 2002, which occurred after the 180-day elimination period ended. (UA0007-0010.) Moreover, Dr. Zimmerman also noted that instead of supporting Ms. Jacobs' disability claim, the newly submitted medical records actually provided "additional substantiation of the lack of an impairing psychiatric condition secondary to Major Depressive Disorder, Bipolar Disorder, or somatoform propensity despite transient fluctuation and diagnosed functional conditions." (UACL0007.)

4.      UNUM's Response to New Information and Medical Reviews

On March 18, 2004, UNUM responded to the information submitted after UNUM's final denial of Ms. Jacobs' claim in January 2004, advising Ms. Jacobs' attorney that the information was not sufficient to cause it to alter its original decision to deny Ms. Jacobs' claim as outlined in UNUM's August 19, 2003 letter. (UACL0004.) UNUM specifically noted that its medical staff reviewed Ms. Jacobs' medical records and evaluated her claim with regard to both physical impairments that might preclude work capacity, as well as psychiatric treatment or impairment. (UACL0003.) Based on their review, UNUM determined that the records did not support either a physical impairment to preclude work capacity or psychiatric impairment or treatment from the time Ms. Jacobs claimed disability in December 2001 until the expiration of her elimination period on June 11, 2002. (UACL0003.) In addition, UNUM also noted that the medical staff documented numerous inconsistencies in the medical records regarding Ms. Jacobs' reports of symptoms. UNUM provided Mr. Campbell with a copy of a medical review outlining many of the inconsistencies in the records. Accordingly, UNUM informed Mr. Campbell that it had conducted its final review of Ms. Jacobs' file and Ms. Jacobs had exhausted all administrative remedies in regard to her appeal for disability benefits. (Id.)

Ms. Jacobs filed this action on November 18, 2004, seeking review of UNUM's denial of long-term disability benefits as arbitrary and capricious and in violation of ERISA, 29 U.S.C. § 1001.

## II.      SCOPE AND STANDARD OF REVIEW

### A.      Scope of Review

In this case, the Policy at issue was funded by a group disability insurance policy issued by UNUM. The parties do not dispute that the Policy is an employee benefit plan as defined by ERISA.  See 29 U.S.C. § 1002(1).  Section 502(a)(1)(B) gives a participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Given the Court's inability to conduct an evidentiary hearing or a bench trial in this matter, the Court may consider only evidence presented to the claims administrator and contained in the administrative record at the time of the final denial of benefits.  See Wilkins v. Baptist Healthcare Sys. Inc., 150 F.3d 609, 617-20 (6th Cir. 1998); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991).

Accordingly, the Court will limit its review to the evidence before UNUM at the time of its claim decision that makes up the administrative record (the "Record"), which was filed with the Court by UNUM on March 23, 2005.  The Record consists of UNUM's claim file regarding Ms. Jacob's claim for group long-term disability benefits under the Policy including, but not limited to, medical records and reports by Ms. Jacobs' doctors, reviews and reports by UNUM's consultants, correspondence between the parties, and a copy of the Policy at issue.

### B.      The Arbitrary and Capricious Standard of Review Applies

A plan administrator's denial of benefits under an ERISA plan is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Wilkins v. Baptist Healthcare Systems, Inc., 150 F.3d 609, 613 (6th Cir. 1998) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Perez v. Aetna Life Ins. Co., 150 F.3d 550, 552 (6th Cir. 1998).  The Sixth Circuit has interpreted Bruch to "require that the plan's grant of discretionary authority to the administrator be 'express.'"  Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (internal citations omitted).  "While 'magic words' are unnecessary to vest discretion in the plan administrator and trigger the arbitrary and capricious standard of review, [the Sixth Circuit], has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret

12

the plan.  Perez v. Aetna Life Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998).  Thus, if the language of the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, that determination is evaluated under the highly deferential arbitrary and capricious standard.  See Yeager, 88 F.3d at 380; Wells v. United States Steel & Carnegie Pension Fund, Inc., 950 F.2d 1244, 1248 (6th Cir. 1991).

In the case at bar, UNUM argues that the language found in the Policy confers such discretion such that the arbitrary and capricious standard should apply.  Ms. Jacobs does not contest UNUM's characterization of the Policy or that the arbitrary and capricious standard should apply.  Rather, in an attempt to avoid the application of this deferential standard of review, Ms. Jacobs argues that UNUM's role as both the insurer and the administrator making the decisions regarding eligibility for benefits under the Policy requires the Court to take into account UNUM's self-interest and apply a heightened scrutiny to UNUM's review and denial of Ms. Jacobs' claim for long-term disability.  (Pl.'s Memo., at 4.)

More specifically, Ms. Jacobs relies on case law from the Eleventh Circuit as support for her assertion that UNUM bears the burden of proving that its decision to deny Ms. Jacobs' claim for disability benefits was not tainted by self-interest and that UNUM acted "exclusively in the interest" of Ms. Jacobs in making the decision.  (Pl.'s Memo. at 10.)  Accordingly, Ms. Jacobs' argument is based entirely on the proposition that because UNUM cannot show that it acted exclusively in her interest, it cannot meet its burden and the Court must find UNUM's decision to deny Ms. Jacobs' claim was arbitrary and capricious.  (Pl.'s Memo. at 9-10.)  As discussed below, the Court finds that Ms. Jacobs characterization of the standard of review in the present case is without support and her reliance on the proposition that UNUM must show that it acted "exclusively in the interest" of the claimant as the basis for her motion is misplaced.

The Court acknowledges that a possible conflict of interest exists when, as here, the decision-maker determining whether benefits are to be paid out under a plan is also the underwriter of the plan who might have a natural reluctance to grant requests for benefits because those benefits would be paid out of its own assets.  Firestone, 489 U.S. at 115; Marchetti v. Sun Life Assurance Co. of Canada, 30 F.Supp.2d 1001, 1008 (M.D. Tn. 1998) (internal citations omitted).  Yet, despite Ms. Jacobs' suggestion otherwise, the Court is not aware of any authority supporting the assertion that the inherent conflict of interest changes the

13

standard of review applied by this Court or any other court in the Sixth Circuit.[10]  See McCartha v. Nat'l City Corp., 419 F.3d 437, 442-43 (6th Cir. 2005) (noting that the Sixth Circuit has specifically rejected the "notion that the conflict of interest inherent in a self-funded and self-administered plan alters the standard of review.").

A majority of courts, including the courts of the Sixth Circuit, recognize that "[i]f a beneficiary plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor . . in determining whether there was an abuse of discretion." Firestone, 489 U.S., at 110-12.  Upon review of the Disability Policy, the Court finds that the language that reads "[w]hen making a benefit determination under the policy, UNUM has discretionary authority to determine eligibility for benefits and to interpret the terms and provisions of the policy" is an express grant of discretion required to support the application of the arbitrary and capricious standard.  See McCartha, 419 F.3d at 442 (discretion conferred by plan language providing in part "that the Plan Administrator 'shall have such duties and powers as National City may prescribe as necessary to administer this Plan and each Benefit Plan,' and that the Plan Administrator and each Named Fiduciary shall have the power 'to construe and interpret this Plan and each Benefit Plan to decide all questions of eligibility.'").  Therefore, the Court concludes that Ms. Jacobs' argument that UNUM's decision must be considered under a more stringent standard of review is without merit.[11]

_____

[10]Ms. Jacobs fails to cite to any Sixth Circuit authority supporting her proposition that UNUM's apparent conflict of interest requires the Court to apply a heightened scrutiny to the review process.  Rather, Ms. Jacobs relies solely on case law from the Eleventh Circuit. Brown v. Blue Cross Blue Shield of Alabama, 898 F.2d 1556, 1561 (11th Cir. 1990)  Although it is true that the Eleventh Circuit has created a higher standard of review for such situations, requiring the fiduciary to "prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest" and to show it operated "exclusively in the interest of the plan participants and beneficiaries," Anderson v. Blue Cross/Blue Shield of Alabama, 907 F.2d 1072,1076 (11th Cir. 1990), this standard does not apply to the present case.  Ms. Jacobs' reliance on Miller v. Metropolitan Life Ins. Co., 925 F.2d 979 (6th Cir. 1991).and University Hospitals of Cleveland v. Emerson Electric Co., 202 F.3d 839, 846 (6th Cir. 1999) as support for the application of this proposition in the Sixth Circuit is misplaced.  Ms. Jacobs' assertion that "a conflict of interest arises as a matter of law when a plan sponsor, such as Unum bears the risk of paying claims...." misconstrues the law in the Sixth Circuit.

[11]The Court notes that to demonstrate the existence of a serious conflict of interest supporting a finding of actual bias, the beneficiary must provide "material probative evidence beyond the mere fact of the apparent conflict tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary.  If the beneficiary does not provide any evidence of a serious conflict, the standard of review is abuse of discretion. Bendixen v. Standard Ins. Co., 185 F.3d 939, (9th Cir. 1999). Ms. Jacobs' has failed to provide any evidence of actual bias or any other support for a heightened standard of review in the present case. See Mers v. Marriott, Int'l Group Accidental Death & Dismemberment Plan, 144 F.3d 1014, 1020 (7th Cir. 1998) (arguments of an inherent conflict of interest are insufficient to show actual bias).

Accordingly, the Court will consider UNUM's inherent conflict of interest as one factor in deciding whether UNUM's review and denial of Ms. Jacobs' claim for long-term disability benefits was arbitrary and capricious.

## III.    DISCUSSION

This case presents a single legal issue to be decided by the Court: whether UNUM's decision to deny Ms. Jacobs' claim for long-term disability benefits, based on the finding that she had not and could not show she was continuously disabled through the 180-day elimination period, was arbitrary and capricious.  The arbitrary and capricious standard of review is the least demanding form of judicial review of an administrative action.  Therefore, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003) (internal quotations and citation omitted); Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989).  Accordingly, the application of this standard requires that the administrator's decision be upheld as long as it is rational in light of the plan's provisions and the available evidence. Marchetti, 30 F.Supp.2d at 1008.

The Court must be confident that UNUM overlooked something important or seriously erred in appreciating the significance of evidence presented in support of Ms. Jacobs' claim in order to find that UNUM's decision was arbitrary and capricious.  The Court will review the Record and UNUM's decision to deny Ms. Jacobs' claim for disability in light of her arguments that it was arbitrary and capricious in order to determine whether there is evidence in the Record to justify UNUM's decision to deny Ms. Jacobs' claim.[12]

### C.    Whether UNUM's Review of Ms. Jacobs' Disability Claim Violated ERISA

Ms. Jacobs first argues that UNUM's denial of her claim for disability benefits did not comply with regulatory requirements under ERISA, and therefore, the Court must weigh this factor against UNUM in determining whether UNUM's decision was arbitrary and capricious.  (Pl.'s Mem. at 4.)  In support of this assertion, Ms. Jacobs cites to portions of the regulations governing claims procedures under ERISA, 29 C.F.R. § 2560.503-1 (the "regulation"), yet, she does not set forth any specific facts identifying how UNUM

---

[12]Because Ms. Jacobs' argument that UNUM "failed to act exclusively in the interest of the plaintiff and failed to interpret the policy in accordance with its terms" is based primarily on the application of a heightened standard of review that does not actually apply to the Court's review of the present case or any other ERISA cases in the Sixth Circuit, the Court will consider her arguments in light of the correct standard of review.  (Pl.'s Memo. at 9-19.)

allegedly violated ERISA in deciding her claim. Rather, Ms. Jacobs argument is based primarily on the subjective belief that UNUM failed to take "seriously the comments from [her] doctors who were knowledgeable regarding her various conditions and impairments" and ignored what, according to her, "should have been obvious" from the records of her doctors "who were knowledgeable about her various conditions and impairments." (Pl.'s Memo. at 7.)

According to Ms. Jacobs, UNUM erred by relying on its own consultants' opinions, which were based on a review of the medical records and reports she submitted, and should have deferred to her doctors who had met, treated and examined Ms. Jacobs. (Pl.'s Memo. at 7-8.) On the other hand, Ms. Jacobs also suggests that UNUM was somehow required to go beyond the information requested and received from Ms. Jacobs, her physicians and attorney in support of her claim, and gather additional information about her occupation requirements and "examples of how her sickness was preventing her from performing each of her job requirements." (Pl.'s Memo. at 7.) In support of this assertion, Ms. Jacobs references particular subsections of the regulation setting forth the information that should be included in a benefit determination notice, yet she does not identify which of UNUM's denial letters allegedly failed to comply with ERISA, or more specifically, how any of UNUM's denial letters violated ERISA's notice requirements. (Def.'s Resp. at 3.)

The Court reviews de novo the legal question of whether the procedure employed by the fiduciary in denying the claim meets the requirements of ERISA. McCartha, 419 F.3d at 444. Contrary to Ms. Jacobs' position that UNUM had an affirmative obligation to "gather" more information in support of her claim, the Court finds that Ms. Jacobs, not UNUM, bore the burden of providing sufficient evidence to prove her eligibility for long-term disability under the terms of the Policy at issue. See Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991) (the plaintiff in an ERISA benefits case bears the burden at all times in proving continuous disability as defined by the plan). Moreover, although it is well-settled that an ERISA Plan must provide participants with written notice of the reasons for denying benefits and a reasonable opportunity for a full and fair review of benefit claims, it is not a violation of ERISA's claims procedures for a plan administrator, such as UNUM, to rely on the information provided by Ms. Jacobs in deciding her claim. U.S.C. § 1133 & 29 C.F.R. § 2560.503-1 (2005).

Further, despite Ms. Jacobs' suggestion otherwise, ERISA does not require UNUM to defer to the recommendations of Ms. Jacobs' treating physicians in deciding her claim. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832-33 (2003); Campbell v. Fortis Benefits Ins. Co., 116 F.Supp.2d 937, 950-51 (M.D. Tenn. 2000).  Accordingly, the Court finds that in the present case, it is not unreasonable for UNUM to rely on its own consultants' opinions, which were based on a thorough and detailed review of the records in determining that Ms. Jacobs was not continuously disabled throughout her elimination period.  (UACL 0007-00010; UACL 00737-741; UACL 00748-750; UACL 00195-00199.)  See Calvert v. Firstar Finance, Inc., 409 F. 3d 286 (6th Cir. 2005) (whether defendant's consultants examined plaintiff is a factor for consideration, but there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination"); Bauer v. Metropolitan Life Ins. Co., 397 F.Supp.2d 856, 865-66 (E.D. Mich. 2005) (there is no implication of arbitrariness that can be drawn from the defendants' failure to give controlling weight to the statements of the plaintiff's treating physicians).

In response to Ms. Jacobs' suggestion that UNUM's benefit determination letters did not comply with ERISA's notice requirements, UNUM points out that Ms. Jacobs has not provided one example of UNUM's alleged failure to comply with the regulation.  Moreover, UNUM specifically cites to the language of the benefit determination letters sent to Ms. Jacobs and contained in the Record as support for the finding that "each benefit determination letter sent to plaintiff described in detail information and documentation reviewed, the basis for the determination, the plan provisions relied upon in making the decision and the steps plaintiff needed to take to appeal the decision."  (Def.'s Resp. at 3.)  There is no evidence before the Court to contradict UNUM's position.

The Sixth Circuit has adopted the "substantial compliance": test in deciding whether a letter denying benefits, such as UNUM's benefit determination letters, satisfies the notification requirements under ERISA. McCartha, 419 F.3d at 444.  A denial notice is in substantial compliance with ERISA's notice requirements if it sets forth the following information: (I) the specific reason or reasons for denying the claim for disability benefits; (2) a reference to the specific plan provisions on which the determination was based; (3) a description of any additional material or information necessary for the participant to perfect the claim and why it is necessary; and (4) a description of the plan's review procedures and the time limits applicable to

the procedures. 29 C.F.R. § 2560.503-1(g) (2005) <u>See</u> <u>McCartha v. National City Corp.</u>, 419 F.3d 437, 444 (6th Cir. 2005). A review of UNUM's benefit determination letters clearly shows that each of the letters provided all of the information necessary to satisfy the essential purpose of ERISA's notification requirements.

Specifically, each of the benefit determination letters set forth the information necessary to notify Ms. Jacobs of (1) UNUM's reasoning for denying her claim; (2) the specific plan provision at issue; (3) the information necessary to perfect and/or appeal the decision and the time in which to appeal; and (4) the fact that she could access all relevant documents and request relevant information during the review process. (UACL 00002-00004; UACL 00202-00203; UACL00378-381;UACL 00707-709; UACL 00723-724; UACL 00737-741.) Accordingly, the Court finds that Ms. Jacobs' assertions that UNUM's benefit determination letters violated ERISA regulations is without merit. <u>McCartha,</u> 419 F.3d at 444. As such, it is clear that UNUM's review and denial of Ms. Jacobs' claim for long-term disability pursuant to UNUM's Disability Plan satisfied the applicable ERISA notification requirements.

**D.      Whether UNUM's Denial of Ms. Jacobs' Disability Claim Was Arbitrary and Capricious**

1.      UNUM Need Not Show It Acted "Exclusively In The Interest" of Ms. Jacobs

Ms. Jacobs' first argues that the Court must find that UNUM's denial of her claim for disability benefits was arbitrary and capricious because UNUM cannot prove that it operated "exclusively in the interest" of Ms. Jacobs and that its denial was not tainted by self-interest. (Pl.'s Memo. at10-11.) As discussed above, Ms. Jacobs' reliance on a heightened standard of review based on Eleventh Circuit case law is misplaced. It is well-settled that the highly deferential arbitrary and capricious standard applies to the Court's review of UNUM's decision to deny Ms. Jacobs' claim for disability benefits and therefore, the assertion that UNUM must prove that its decision was not tainted by self-interest or that it acted "exclusively within the interest" of the plan participant is without merit. Accordingly, the Court finds that it is Ms. Jacobs' burden to show that UNUM acted arbitrarily and capriciously in administering her claim. Therefore, UNUM need only show that its decision was "rational in light of the plan's provisions . . .," <u>Daniel v. Eaton Corp.,</u> 839 F.2d 263, 267 (6th Cir. 1988), and that the outcome was not "downright unreasonable" in order to establish its decision was not arbitrary and capricious. <u>James v. General Motors Corp.</u>, 230 F.3d 315, 317

(7th Cir. 2000).

        2.        UNUM's Decision is Supported by the Record

As discussed above, the Record in this case developed as a result of a series of ever more substantial submissions of information prompted by UNUM's initial denial of benefits and UNUM's repeated requests that Ms. Jacobs provide any additional available information to support her claim for review. The Court's review of the Record reveals that the evidence supports UNUM's conclusion that Ms. Jacobs has not shown that she was continuously disabled throughout the 180-day elimination period claim and therefore, is not entitled to long-term disability benefits under the Policy. Accordingly, as discussed further below, the Court finds that the evidence in the Record supports UNUM's decision to deny Ms. Jacobs' claim for long-term disability benefits on that basis. See Hosps. of Cleveland v. Emerson Elec., 202 F.3d 839, 846 (6th Cir. 2000) (the Court must defer when "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.")

Under the Policy, disability benefits do not accrue until the day after the elimination period is completed. (UACL00532.) The Record reflects that in order to be eligible to receive disability benefits, Ms. Jacobs must first show that she was "continuously disabled" during the entire 180-day elimination period, which began on December 16, 2001 and ran until approximately June 14, 2002.[13] Specifically, Ms. Jacobs qualifies as "disabled"[14] under the Policy once UNUM determines, based on information provided by Ms. Jacobs, that she was limited from performing material and substantial duties of her regular occupation due

_____

[13]Although the Record contains documents such as a Long-term Disability Claim Statement reporting Ms. Jacobs' last day of work as December 12, 2001 and her date of disability as December 13, 2001 (UACL000687-689; UACL00775; UACL00783-785),which would likely mean her elimination period would begin to run on December 13, 2001, according to UNUM's files the elimination period did not begin to run until the day after she was released from the hospital and could not return to work, December 16, 2001. Regardless, whether Ms. Jacobs' elimination period began to run on December 13 or December 16, the three day difference in dates would not materially impact UNUM's analysis of whether Ms. Jacobs could show that she was continuously disabled during the 180-day elimination period.

[14]A claimant is "disabled" under the Policy when UNUM determines that she is limited from performing material and substantial duties of her regular occupation due to her sickness or injury and during the elimination period, she is unable to perform any of the material and substantial duties of her regular occupation. (UACL00532.)

to her depression and that she was under the "regular care" of a physician.[15]  (UACL00532; UACL00542.)

In light of the stated Policy requirements, Ms. Jacobs does not dispute that she must provide evidence to show that she was continuously disabled during the 180-day elimination period before she is eligible to collect disability benefits.  Ms. Jacobs concedes that "the record repeatedly show[s] that UNUM's main reason for denial of the claim is an alleged lack of documentation of symptoms supporting any disability in the time period stretching from [her] seizures in December of 2001, from which date she did not work again, to the end of the elimination period in June of 2002."  (Pl.'s Memo. at 14.)  Further, Ms. Jacobs does not dispute UNUM's finding that she failed to seek regular medical care throughout the entire elimination period as required by the Policy.  (Pl.'s Resp. at 2-4.)

Rather, Ms. Jacobs apparently contends that because "she experienced problems with her insurance coverage and was unable to receive all of the treatment that she might have needed," she is somehow excused from the requirement that she be under the regular care of a physician.  (Pl.'s Resp. at 2-4.)  In an attempt to circumvent this Policy requirement, Ms. Jacobs' further argues that "[her] inability to seek regular medical care throughout the entire elimination period does not indicate a lack of impairment during that period."  (Pl.'s Resp. at 2-4.)  Specifically, Ms. Jacobs asserts that she "clearly made an effort to regularly visit her primary care physician and several other specialists despite her lack of insurance," and "[e]ven if [she] failed to receive medical care, the Record still overwhelmingly shows a continuous disability throughout the entire elimination period as required by UNUM's [Long-Term Disability] Policy."  (Pl.'s Resp. at 4.)  Accordingly, Ms. Jacobs' argues that UNUM's denial of her claim is not supported by the evidence in the Record.  (Pl.'s Memo. at 13-18; Pl.'s Resp. at 2-4.)

In response to Ms. Jacobs' arguments and in support of its own Motion, UNUM reiterates the Policy requirements and points out that the Record "clearly shows that [Ms. Jacobs] sought and received minimal medical treatment throughout the elimination period which did not support a consistent and continuous

---

[15]"Regular Care" is defined by the Policy to mean: (1) you personally visit a doctor as frequently as is medically required according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and (2) you are receiving the most appropriate treatment and care which conforms with generally accepted medical standards for your disabling condition(s), by a doctor whose specialty or experience is the most appropriate for your medical condition(s) according to generally accepted medical standards.  (UACL00510.)

impairment preventing her from performing the material and substantial duties of her light duty occupation." (Def.'s Resp. at 6.) Further, UNUM notes that despite numerous opportunities to submit additional information in support of her claim and comprehensive medical reviews of all of the information submitted by Ms. Jacobs, "none of the records relied upon by [Ms. Jacobs] in her motion evidence a continuous impairing disability during the elimination period." (Def.;s Resp. at 6.) Accordingly, UNUM asserts that its decision to deny her claim for benefits was made after careful consideration of the Record and therefore, was not arbitrary and capricious. (Def.'s Memo. at 14; Def.'s Resp. at 4-7.)

As indicated above, there is no question that Ms. Jacobs was not under the regular care of a physician as required by the Policy. In fact, according to the Record, Ms. Jacobs' began seeing her primary care provider, Ms. Case, for depression in July, 1999,[16] yet at the time Ms. Jacobs submitted her claim for disability benefits to UNUM in June 2002 Ms. Case had not treated Ms. Jacobs since February of that year. (UACL00686.) While the Court acknowledges Ms. Jacobs' argument that her "inability to seek regular medical care throughout the entire elimination period does not indicate a lack of impairment during the period" (Pl.'s Rep. at 4.), the Court also recognizes that UNUM has the discretion to determine eligibility for benefits and to interpret the terms and provisions of the Policy. (UACL00537.) Therefore, based on a review of the Record, the Court cannot say that UNUM's conclusion that Ms. Jacobs' minimal medical treatment throughout the elimination period did not support a consistent and continuous impairment preventing her from performing the material and substantial duties of her light duty occupation was unreasonable. See Peruzzi, 137 F.3d at 433 (holding that where ERISA plan gives the administrator discretion to interpret its terms, the administrator's interpretation must be upheld unless it is arbitrary and capricious.)

In short, the Record clearly shows that throughout Ms. Jacobs' claim for long-term disability benefits and her appeal of UNUM's denial of benefits, UNUM carefully considered all of the medical evidence

---

[16]In fact, on August 24, 2001 and August 31, 2001, approximately two months before Ms. Jacobs suffered a seizure at work allegedly resulting in her inability to return to work, Ms. Jacobs discussed her impending retirement and her concern that she would need to go on disability before that time. (UACL00639; UACL00654-657.) Ms. Jacobs' medical records show that she had suffered from seizure disorder and depression since at least 1999 and was taking medication for both conditions, yet there is no evidence in the Record that this apparently pre-existing condition ever affected her ability to perform her duties as a Patient Care Technician or otherwise impacted her ability to work on a regular basis.

Case 3:04-cv-01034   Document 25   Filed 02/21/06   Page 21 of 23 PageID #: 88

received in support of Ms. Jacobs' claim including each physician's clinical findings, dates of treatment, treatment notes and diagnoses.[17]  Further, UNUM determined Ms. Jacobs was not entitled to long-term disability benefits only after four different medical professionals reviewed her file and determined that Ms. Jacobs' was not continuously disabled throughout her elimination period.[18]  Based on a review of the Record, the Court finds that UNUM's final determination was based upon a rational, principled review of the medical information, plaintiff's occupational requirements as set forth by her employer and the terms of the Policy at issue in this case.  Accordingly, the Court cannot conclude that UNUM's handling of Ms. Jacobs' claim and its decision to deny her claim for benefits was arbitrary or capricious or otherwise an abuse of its discretion under the Policy.

Therefore, the Court finds that UNUM is entitled to judgment on the Record and the Court GRANTS UNUM's Motion for Judgment on the Administrative Record.

---

[17]The Court also notes that evidence in the Record shows that Ms. Jacobs had a significant medical history of seizures and depression during the entire time she worked as a Patient Care Technician, which further supports UNUM's determination that there was no evidence that Ms. Jacobs' impairment prevented her from performing the material and substantial duties of her light duty occupation.  Moreover, according to Ms. Jacobs' medical records, the incident in December, 2001 was not the first time Ms. Jacobs had a seizure at work or was admitted to the hospital as a result.  In fact, on March 31, 2000 Ms. Jacobs was working at the VUMC when she was found unresponsive and was taken to the emergency room.  It was believed that she had suffered a seizure, but she did not remember the event nor were there any witnesses to the event.  She was admitted to Vanderbilt University Hospital and treated by a Dr. Noel Lim, Chief Resident of Neurology.  At that time she reported that she might have had a seizure episode the month before and that she had a history of both seizures and depression.  (UACL00663-662.)  According to the Record, Ms. Jacobs returned to work after the March 2000 incident.

[18]In her response brief, Ms. Jacobs argues that UNUM violated its own claims procedures by having Dr. Zimmerman review the claim twice.  (Pl.'s Resp. at 5.)  In response UNUM points out that the Policy requires that the appellate review be conducted by "a person different from the person who made the initial determination," and since Dr. Zimmerman's reviews were conducted in the course of Ms. Jacobs' appeal and she did not participate in the initial determination, Ms. Jacobs is clearly misconstruing the language at issue.  (Def.'s Resp. at 7.)  Although not determinative in this case, the Court agrees with UNUM that Ms. Jacobs' submission of additional information for consideration after UNUM's denial of her initial claim and appeal is not a new "appeal" and does not obligate UNUM to have different health care professional review the records.  Accordingly, the Court finds that UNUM did not violate its own claims procedures by having Dr. Zimmerman review the additional information submitted by Ms. Jacobs in support of her appeal already reviewed by Dr. Zimmerman.

22

**IV.     CONCLUSION**

For the reasons set forth above and for good cause shown, the Court hereby GRANTS Defendant UNUM's Motion for Judgment on the Administrative Record and DENIES Plaintiff Ms. Jacobs' Motion for Judgment on the Administrative Record.

_____
Senior Judge Thomas A. Wiseman, Jr.
United States District Court for the
Middle District of Tennessee